Joseph Vernon WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 63019.

Court of Criminal Appeals of Texas,
Panel No. 2.

Oct. 8, 1980.

Paul A. Clark, Lufkin (Court-appointed),
for appellant.

Robert Huttash, State's Atty., Austin, for
the State.

Before DOUGLAS, ROBERTS and
CLINTON, JJ.

OPINION

CLINTON, Judge.

Appeal is taken from a conviction for the
offense of murder wherein the jury, impan-
eled to set punishment upon appellant's
plea of guilty, assessed such punishment at
confinement in the Texas Department of
Corrections for a term of ninety nine years.

In his sole ground of error appellant con-
tends that the trial court erred in refusing
to grant a timely motion for a mistrial after
the prosecutor asked a question which was
so manifestly improper and prejudicial that
the trial court's instruction to the jury could
not have cured the harm. Given the cir-
cumstances surrounding the asking of the
question and its probable impact on the
jury, we agree and now reverse the judg-
ment below.

After finding appellant guilty on his plea
of guilty, the trial court impaneled a jury to
assess appellant's punishment. At the out-
set of this hearing, the State introduced,
without objection, its Exhibits 5 and 6, cop-
ies of the judgment and sentence, respec-
tively, in Cause Number 8751, evidencing
appellant's final conviction for the felony
offense of incest on March 19, 1975. Prior
to the introduction of those two exhibits,
defense counsel made an oral motion in

limine[1] to prohibit the prosecution from mentioning or otherwise alluding to facts or details of any final conviction which the State would seek to introduce. The trial court granted this motion, specifically prohibiting the State from introducing a certified copy of the indictment in Cause Number 8751[2] and from alluding to facts relating to the prior final incest conviction.

Following admission of State's Exhibits 5 and 6 the State rested.

One of appellant's witnesses during this phase of the proceeding was Leona Green, appellant's sister. She testified, *inter alia,* that appellant had had a nervous problem for the last twenty years as a result of an injury received while in the Army and that he had been hospitalized for this nervous condition on several occasions. The witness further noted that this condition would manifest itself by appellant's becoming hysterical and going into crying spells which would necessitate his having to be taken to the emergency room at a hospital to receive a shot which would calm his nerves.

On cross examination, however, the following occurred:

Q: [By Mr. Goodwin]: You say he has been nervous for a number of years?

A: That's right.

Q: Do your know whether or not he was nervous on March the 19th, 1975 whenever he committed the offense of incest *with his daughter,* was he nervous then, Mrs. Green?

Defense counsel immediately objected and moved for a mistrial; the trial court excused the jury. The thrust of appellant's motion for a mistrial was that the prosecutor violated the trial court's order respecting appellant's motion in limine inasmuch as it revealed to the jury facts relating to his prior felony conviction, specifically, that the *offense of incest had been committed* with appellant's daughter.[3] The State's response was, that although the judgment and sentence of the incest conviction had been admitted into evidence, *no details of the offense had been placed before the jury.* The colloquy between the respective attorneys and the trial court regarding appellant's motion for mistrial sheds more light on the subject, particularly the State's position:

MR. GOODWIN [Prosecutor]: *I don't think it matters,* Judge. *What does it matter.* Sure, it is not going to be cured, the Judgment and Sentence is [sic] in evidence.

MR. ARNETT [Defense Counsel]: The fact it was with a child was not in evidence. It was not put in evidence. It is now before the jury.

MR. GOODWIN: Like, I say, that is details [sic] that is not details [sic] of the offense. *What difference does it make if it was the grandmother of a child or whoever.*

MR. CLARK [Defense Counsel]: Because you are not entitled to go into that.

MR. GOODWIN: I am not entitled to say was he nervous whenever he drug his

1. Appellant filed a pretrial motion in limine requesting that "should the prosecution contend at any time that the above matters [matters appellant wished to avoid reference to during the trial] are admissible that *the prosecutors be ordered to first approach the bench and make known the basis for such contention,* thus allowing the defense an opportunity to rebut said contention before *irreparable harm* is done by allusion thereto before the trier of fact." Such motion was granted. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. Urging that the ruling is erroneous the State points to the tandem of *Knox v. State,* 487 S.W.2d 322 (Tex.Cr.App.1972) and *Fairris v. State,* 515 S.W.2d 921 (Tex.Cr.App.1974). The

trial court cautiously *did not admit the indict-ment* in appellant's incest conviction. We decline the State's invitation to correct on appeal a ruling against the State.

3. Appellant's daughter testified that at the time of trial, May 22, 1978, she was eighteen years of age. The judgment and sentence reflect that they were entered on or about March 19, 1975 or some three years prior to this trial. Appellant's daughter therefore, at the time of the incest conviction, was more likely than not fifteen years of age. This fact is of considerable import in considering the probable impact of the prosecutor's question on the minds of the jury, *infra.*

little daughter in and ripped the clothing off her body and did it, no, Mr. Clark, I am not. *But the nature of the fact it is incest, we know he didn't rob a bank.*

THE COURT: ... [O]f course, he has gone one step further. We still don't have a name on that person. *I assume people know what incest is.*

MR. ARNETT: ... [P]rejudice and inflammatory things about incest is not so much with somebody *but with a child.* That is what is going to be even more inflammatory is the reason [sic] we wanted it kept out.

THE COURT: Well, I don't know what you are getting at.

MR. CLARK: What the age of the victim [sic] it was.

MR. GOODWIN: *That is admissible,* Judge.

THE COURT: The only thing that bothers me, *I had a motion in limine.*

MR. GOODWIN: *As to details.*

THE COURT: Well—

MR. GOODWIN: *Let me give them some details if they want details. That is no details,* [sic] the reading of the indictment. That is not details [sic].

THE COURT: Well—*Details to the extent that I ruled on it and there is a motion in limine in the record with a court order saying to keep it out.*

\* \* \* \* \* \*

THE COURT: [B]ut what we are talking about here is *a motion in limine which really the record indicates I have already rulled* [sic].

The trial court eventually recalled the jury, instructed them not to consider the question posed by the prosecutor for any purposes and further cautioned that he would not even restate the question for fear that it would give undue emphasis to it. The trial court then overruled appellant's motion for mistrial.[4]

Succinctly stated then appellant's contention is that the prosecutor's question not only violated the order in limine by revealing inflammatory facts of the final conviction in the presence of the jury, but also that the question was so manifestly improper as to suggest the impossibility of withdrawing the impression produced on their minds notwithstanding a curative instruction given by the court.

■ In introducing evidence of prior convictions as against an accused, the State is not permitted to allude to or in any way bring before the jury the fact surrounding the commission of the offense forming the basis for such a conviction. *Lege v. State,* 501 S.W.2d 880 (Tex.Cr.App.1973); *Mullins v. State,* 492 S.W.2d 277 (Tex.Cr.App.1973); *Cain v. State,* 468 S.W.2d 856 (Tex.Cr.App. 1971). The prosecutor's question violated this precept by informing the jury that the victim of the incest was a daughter of appellant—a fact that could not be gleaned from a perusal of the judgment and sentence which were before the jury. Moreover, improper injection of the details appears to have been done deliberately, considering a prior effort,[5] the limine order, the colloquy and the later follow up questions.

---

4. At the close of the colloquy outside the presence of the jury, the trial court again admonished, "I will instruct the district attorney that he intends to bring out anything like that again, approach the bench first." Nevertheless, after covering other matters with the same witness, the prosecutor recalled, "And I believe it was your testimony that just what his state of mind might have been on March 19, 1975, you just don't know what it was?" Furthermore, still with the same witness, appellant's sister, for no other apparent purpose we can discern, he drew from her that appellant had seven daughters, five of whom were "his own."

5. A daughter of appellant who had married the deceased was the victim of his incest. Earlier, before the limine order was made, that widowed daughter was presented as a witness by the State. The prosecutor developed her background, relationship to various parties and where she had lived as a child and after her marriage. At one point he established that while in the eighth grade she had gone to live for about a year with an aunt in Louisiana and asked, "Why did you go to Louisiana to live with your aunt?" Smartly, the trial court *sua sponte* interrupted, summoned counsel to the bench and held an unreported discussion. When he resumed interrogation, the prosecutor moved on to another matter.

We believe that the misconduct was so clearly calculated to inflame the minds of the jury and was of such character so as to suggest the impossibility of withdrawing the impression produced on their minds. *Cavender v. State*, 547 S.W.2d 601, 603 (Tex.Cr.App.1977); *Boyde v. State*, 513 S.W.2d 588 (Tex.Cr.App.1974); *White v. State*, 444 S.W.2d 921 (Tex.Cr.App.1969).

Given the probable impact of the matter on the minds of an average jury, see *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), there is a reasonable probability that the jury's assessment of punishment would have been different had the complained of material not been permitted to come before it.[6] *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Indeed, the ninety nine year sentence assessed against one who admitted his guilt is no better proof of the harm suffered by appellant as a result of prosecutorial conduct which passed the line of tolerable imperfection.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority reverses the conviction because the prosecutor asked a question which the court instructed the jury not to consider. A prior judgment in the incest case was introduced. This was a case used for enhancement. There was no objection that it was an improper question to a reputation witness. Nothing is presented for review.

Evidence that the victim of appellant's incest was the wife of the deceased would have been admissible in showing the prior relationship between appellant and the deceased under V.T.C.A., Penal Code, Section 19.06.

Appellant raised that relationship by offering testimony that the deceased had abused his own children and that the abuse was know to appellant, the children's grandfather.

In *Keener v. State*, 300 S.W.2d 85 (Tex. Cr.App.1957), having reversed the conviction upon other grounds, the Court wrote:

"Upon another trial, the district attorney should be given opportunity to prove, if he can, that appellant threatened to kill another man because of the wife of the deceased, and to show any relationship between the appellant and Mrs. Daley which would shed light on appellant's motives and intent. . . ."

That holding should be applicable here.

In *Ruiz v. State*, 523 S.W.2d 691 (Tex.Cr. App.1975), in permitting the introduction of evidence of the unadjudicated rape of the deceased's daughter by the appellant in that case, we said:

" . . . The rule applicable to the complained of testimony has been well stated as follows:

" 'It is always relevant and admissible for either the State or defendant to show the sexual, illicit, or companiable relationship existing between the defendant or the deceased and a third party, as well as each other, when such fact tends to show motive or shed light on the transaction and issue. When such testimony is gone into by either party in a proper manner, the other party may, where he is able to do so, rebut such testimony.' [Numerous citations omitted.] 4 Branch's P.C.2d ed. 558–559, Sec. 2201."

That appellant had had a sexual relationship with his daughter was not a detail, but the gravamen, of the offense of incest. That the daughter was the wife of the deceased at the time of the murder rendered that prior sexual relationship directly

---

**6.** The State's contention that the instruction "cured the error, if any," reminds us that:

"It is better to follow the rules than to try to undo what has been done. Otherwise stated, one cannot 'unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it.'."

*Dunn v. United States*, 307 F.2d 883, 886 (5 Cir. 1962) (Gewin, J.)

relevant to the charge of murder and admissible under Section 19.06.

But even if it could be assumed that it was error to go into the nature of the incest, the error in the prosecutor's question was harmless.

The jury could not have been surprised to learn that the incest had taken place with a relative. For this to have been an offense of incest, there must have been sexual relations with a relative. The reference to the daughter was followed by a thorough instruction to disregard:

> "THE COURT: Ladies and gentlemen of the jury, you may or may not recall the exact wording of the last question asked. I don't think it was ever answered by the witness but I will instruct you not to consider the last question asked for any purpose whatsoever in this trial and I will not restate it for the fact I don't want to give any emphasis to it. All right. Are you ready to proceed, Mr. Goodwin."

The statement about incest with a daughter does not show the details of the offense.

Finally, the so-called error could have been cured by the admission of the indictment in the incest case, authorized by *Knox v. State*, 487 S.W.2d 322 (Tex.Cr.App.1972), and *Fairris v. State*, 515 S.W.2d 921 (Tex. Cr.App.1974), which contained the same information alluded to by the prosecutor. It is apparent from the record that the court believed it was precluded from admitting that indictment by its previous ruling upon a motion in limine seeking to prohibit its admission:

> "MR. GERALD GOODWIN: That is admissible, Judge.
>
> "THE COURT: The only thing that bothers me, I had a motion in limine.
>
> "MR. GERALD GOODWIN: As to details.
>
> "THE COURT: Well—
>
> "MR. GERALD GOODWIN: Let me give them some details if they want details. That is no details, the reading of the indictment. That is not details.

> "THE COURT: Well—Details to the extent that I ruled on it and there is a motion in limine in the record with a court order saying to keep it out.
>
> "MR. GERALD GOODWIN: The indictment, and it is not in.
>
> "THE COURT: That's correct.
>
> "MR. GERALD GOODWIN: It is not in.
>
> "MR. PAUL CLARK: Allegations—
>
> "MR. GERALD GOODWIN: I would ask at this time to be able to put it in. I want it in. I think I am entitled to it.
>
> "MR. ROBERT ARNETT: Judge has a ruling on that.
>
> "MR. GERALD GOODWIN: We can ask the court to reconsider it.
>
> "THE COURT: Well, well the only time I indicated I might would, you know, reconsider that at that time—
>
> "MR. GERALD GOODWIN: Judge, like relationship, you know, the concern for the children that the deceased has committed against the children. I can ask her about the abuse of his own children, that is, you know, compare. Compare the abuse of David Massey committed against his children was it any worse than what this man has committed?
>
> "THE COURT: Of course, we both are operating under the same law. Either side has a right to offer evidence between defendant and deceased. Any evidence as to their relationship, their basically getting along, their relationship. Either side can offer evidence on that basically, right? But what we are talking about here is a motion in limine which really the record indicates I have already ruled.
>
> "MR. GERALD GOODWIN: Well, I will live by the ruling of the court but I feel I am entitled to put the indictment in and show that 1, 2, 3, 4, 5 kids he had incest with.
>
> "THE COURT: Well, I could have let it in. I told you all I think, that I had one authority that said I could and one seemed to indicate that I couldn't, but I kept it out.
>
> "MR. GERALD GOODWIN: You didn't have any that indicated you couldn't.

"THE COURT: Well, in a way when you take what he indicated, but the main thing is the order saying keep it out. Let's take a recess."

The ruling granting the motion in limine was not binding on the trial court. *Norman v. State,* 523 S.W.2d 669 (Tex.Cr.App.1975). That ruling did not serve to overrule the prior holdings of this Court. Neither should we permit that ruling to convert otherwise admissible evidence into reversible error.

It is perhaps an unintentional irony of the majority opinion that it finds the error in the reference by the prosecutor to the victim of the incest, which could have been cured by presenting the same information to the jury as fact through the admission of the indictment, could not be cured by strongly admonishing the jury not to consider it.

If it can be said that there was a violation of the trial court's ruling on the motion in limine, that would not by itself amount to reversible error. Occasionally a trial judge will make an incorrect ruling at the beginning of a trial. This Court does not reverse because such a ruling was violated, but reverses if a rule of law has been violated that harms a defendant.

The judgment should be affirmed.